IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

EDNA ARMSTRONG, as Attorney in )
Fact for Thomas Flood, and )
THOMAS FLOOD, )
)
Plaintiffs, )
)
v. ) CASE NO. CV413-010
)
OCWEN MORTGAGE COMPANY; OCWEN )
LOAN SERVICING, LCC; OCWEN )
FINANCIAL CORP.; TAYLOR BEAN & )
WHITAKER MORTGAGE CORP.; and )
THE FEDERAL HOME LOAN MORTGAGE )
CORP.; )
)
Defendants. )
)

O R D E R

Before the Court is Defendants' Motion to Dismiss (Doc. 34), to which Plaintiffs have filed a response in opposition (Doc. 36). In addition, both parties have each filed two replies. (Docs. 39, 41, 46, 49.) In their motion, Defendants seek to dismiss Plaintiff Armstrong for lack of standing and to dismiss all counts in Plaintiffs' second amended complaint for failure to state claims upon which relief can be granted. For the following reasons, Defendants' Motion to Dismiss (Doc. 34) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff

Armstrong will remain as a plaintiff in this case. Count Ten[1] of Plaintiffs' second amended complaint is **DISMISSED AS MOOT**. The remainder of Plaintiffs' claims will proceed to trial.

## BACKGROUND

This case arises from the foreclosure of Plaintiffs' home, located at 522 West 45th Street, Savannah, Georgia (the "Property").[2] (Doc. 32 ¶ 27.) Plaintiff Flood holds all legal interest in the Property, while Plaintiff Armstrong acts on his behalf with regard to real estate transactions pursuant to a New York short-form power of attorney. (Id. ¶ 3.) On July 23, 2007, Plaintiffs purchased the home with the assistance of a mortgage from Defendant Taylor Bean & Whitaker Mortgage Company ("TB&W").[3] (Id. ¶ 33.) The mortgage was secured by the execution of a security deed, and provided that Plaintiffs were required to make a payment of roughly $350 per month in principal and interest and an additional $150 per month to an escrow fund for real estate taxes and homeowner's insurance

---

[1] Because Plaintiffs' second amended complaint contains two Count Eights, Count Ten is erroneously designated as Count Nine. (Doc. 32 ¶¶ 215-221.)

[2] For the purposes of this motion, Plaintiffs' allegations set forth in their complaint will be taken as true. See Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009).

[3] Plaintiffs have filed a notice of voluntary dismissal as to Defendant TB&W. (Doc. 31.) Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), a plaintiff may dismiss an action by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Because Defendant TB&W has filed neither an answer nor a motion for summary judgment, it is hereby **DISMISSED** from this action.

(the "Security Deed"). (Id. ¶¶ 33-36.) However, Plaintiffs always paid their homeowner's insurance premiums with funds not held in the escrow account. (Id. ¶ 37.) The Security Deed also stated that Plaintiffs would be provided with an annual accounting of the escrow fund. (Id. ¶ 38.)

Sometime after the execution of the Security Deed, Defendants Ocwen Financial Corporation, Ocwen Mortgage Company, and Ocwen Loan Servicing Company, LLC, (collectively, "Ocwen") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") acquired the Security Deed and became beneficiaries thereof. (Id. ¶¶ 38-42.) In November 2007, the escrow fund payment was increased from $150 to roughly $400. (Id. ¶ 43.) Plaintiffs contacted Defendant Ocwen to inquire about the increase in the escrow fund payments, but no explanation was provided. (Id. ¶¶ 45-47.) Plaintiffs requested an accounting of the escrow fund pursuant to their rights under the Security Deed, but no accounting was conducted. (Id. ¶¶ 48-49.) Thereafter, Plaintiffs ceased making mortgage payments. (Id. ¶ 50.)

On September 19, 2011, Defendant Ocwen informed Plaintiffs they were in default on their mortgage and that Plaintiffs should turn in a "Borrower Response Package" to avoid foreclosure. (Id. ¶¶ 51-52.) Plaintiffs turned in the requested documents and received notice that an agent would assist them in applying for a modification of their mortgage. (Id. ¶¶ 53-54.) Defendant Ocwen's response also stated that

no foreclosure sale would take place and that Plaintiffs would not lose their home during the modification application process. (Id. ¶ 55.) Over the next few months, Plaintiffs applied for a modification and repeatedly received assurances from Defendant Ocwen, via written correspondence and through Defendant Ocwen's agent, that no foreclosure sale would take place until at least thirty days after a decision on Plaintiffs' modification application was made. (Id. ¶¶ 57-67.) During this time, Plaintiffs made no mortgage payments. (Id. ¶ 71.)

Plaintiffs never received a decision regarding their modification application, but received notice on June 4, 2012 that the Property would be sold at foreclosure the next day. (Id. ¶¶ 73-74.) On June 5, 2012, Defendant Ocwen sold the Property at foreclosure to itself. (Id. ¶ 78.) Three weeks later, on June 26, 2012, Plaintiffs received notice that the Property was to be sold on June 5, 2012. Over the following months, Defendants obtained dispossessory warrants and writs of possession against Plaintiffs. (Id. ¶ 80-86.) On November 8, 2012, the Sherriff of Chatham County served Plaintiffs with a final notice of dispossession. (Id. ¶ 87.)

On December 5, 2012, Plaintiffs filed the present action in the Superior Court of Chatham County, Georgia and obtained a temporary restraining order preventing their dispossession. (Id. ¶¶ 94-95.) On January 17, 2012, Defendants removed this action to this Court pursuant to 12 U.S.C. § 1452(f). On

January 23, 2013, this Court entered a consent order enjoining Defendants from dispossessing Plaintiffs and requiring Plaintiffs to make regular payments into the registry of the Court. On July 29, 2013, Plaintiffs filed their Second Amended Complaint. (Doc. 32.) On August 8, 2013, Defendants filed this Motion to Dismiss. (Doc. 34.)

## ANALYSIS

### I. PLAINTIFF ARMSTRONG AS A PROPER PARTY

As an initial matter, Defendants contest whether Plaintiff Armstrong is a proper party to this action. Plaintiff Armstrong claims authority to sue based on possession of a short-form power of attorney executed in New York. (Doc. 32, Ex. A.) Defendants argue that, under Georgia law, possession of a power of attorney does not authorize Plaintiff Armstrong to bring suit in this matter. (Doc. 34, Attach. 1 at 6-8.) Defendants also argue that, even if New York law were to apply, the power of attorney is defective because it did not include a necessary disclosure statement. (Id. at 8-10.) Plaintiffs respond that New York law governs the authority granted by the document (Doc. 36 at 5-7) and correctly point out that the power of attorney was executed prior to the requirement of the disclosure statement (id. at 7-8). See Powers of Attorney, ch. 644, N.Y. Gen. Oblig. Law § 5-1501B(d)(1), 5-1513(n) (McKinney 2009).

5

Pursuant to Federal Rule of Civil Procedure 17, a party may bring suit on another's behalf if authorized to do so by statute. Fed. R. Civ. P. 17(a)(1)(g). Because Georgia law applies lex loci contractus, the Court finds that a New York power of attorney grants its possessor all the same authority as it would in New York state. See Gen. Tel. Co. of Se. v. Trimm, 252 Ga. 95, 95, 311 S.E.2d 460, 461, (1984) (holding contracts in Georgia governed by law of place where made). Accordingly, because the New York statute would allow Plaintiff Armstrong to bring this action, and because it was validly executed at the time of its creation, the Court finds no reason to dismiss Plaintiff Armstrong from this action.[4] N.Y. Gen. Oblig. Law § 5-1502A(1) (McKinney 2009).

II. MOTION TO DISMISS STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Aschroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

---

[4] The Court also sees no reason why the power of attorney would not permit Plaintiff Armstrong to bring this suit even if Georgia law were to apply. See O.C.G.A. § 10-6-5 ("Whatever one may do himself may be done by an agent.").

6

Twombly, 550 U.S. 544, 555 (2007)).[5] "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678 (internal quotations omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Id.

When the Court considers a motion to dismiss, it accepts the well-pleaded facts in the complaint as true. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). However, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 U.S. at 678. Moreover, "unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations." Sinaltrainal, 578 F.3d at 1268. That is, "[t]he rule 'does not impose a probability requirement at the pleading stage,' but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the

---

[5] Iqbal makes clear that Twombly has been the controlling standard on the interpretation of Federal Rule of Civil Procedure 8 in all cases since it was decided. Iqbal, 129 S. Ct. at 1953 ("Though Twombly determined the sufficiency of a complaint sounding in antitrust, the decision was based on our interpretation and application of Rule 8 . . . [that] in turn governs the pleading standard in all civil actions and proceedings in the United States district courts." (internal quotations and citations omitted)).

necessary element." Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting Twombly, 550 U.S. at 545).

III. CONVERSION AND MONEY HAD AND RECEIVED

Defendants argue that Plaintiffs' claims for conversion and money had and received fail because the funds allegedly held wrongfully cannot be specifically identified. (Doc. 34, Attach. 1 at 11.) Defendants also argue that Plaintiffs have failed to plead facts to suggest that Defendants misappropriated money from the escrow account or that Defendants refused to return the money when asked.[6] (Id. at 11-12.) Plaintiffs respond that their identification of the funds earmarked for homeowner's insurance is sufficiently specific, that Defendants refused to apply the funds as Plaintiffs indicated, and that Defendants' refusal to account for the funds indicates at least plausible misuse. (Doc. 36 at 8-9.)

While the elements of conversion and money had and received are similar under Georgia law, they are not identical. Actions for conversion generally involve personal

---

[6] The Court finds Defendants' additional argument that any possible overcharge in the escrow payment would be effectively cancelled out by the arrearage of Plaintiffs' default to be wholly without merit. Even if Defendants' contentions were supported by law, the determination would still be a factual inquiry unfit for a pre-discovery, undeveloped, motion-to-dismiss analysis. See Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1294 (11th Cir. 2005).

property, but an exception for money exists in instances where the funds are specific and identifiable. Grant v. Newsome, 201 Ga. App. 710, 710-11, 411 S.E.2d 796, 798 (1991). A claim of money had and received, however, does not necessarily fail simply for lack of specificity. Taylor v. Powertel, Inc., 250 Ga. App. 356, 359, 551 S.E.2d 765, 769-70 (2001). Regardless, in this case Plaintiffs seek money from an escrow fund earmarked only for insurance premiums and real estate taxes. Specifically, Plaintiffs' complaint attempts to recover only money not used for real estate taxes. (Doc. 36 at 8-9.) Where the funds are earmarked for a specific purpose, like an insurance premium payment, the money is sufficiently identifiable for a conversion claim. See Unified Servs. Inc. v. Home Ins. Co., 218 Ga. App. 85, 89, 460 S.E.2d 545, 559 (1995). In addition, while the co-mingling of the two payments in the same account may complicate the issue, it does not necessarily defeat a claim for conversion. See Adler v. Hertling, 215 Ga. App. 769, 774, 451 S.E.2d 91, 97 (1994). Accordingly, Plaintiffs' claims of conversion and money had and received will not be dismissed for lack of specificity.

The Court next considers whether Plaintiffs have sufficiently pled all the elements of their claims. For a conversion action, Plaintiffs must normally allege (1) that

they had title to the money or the right of possession; (2) that the Defendants are in actual possession of the property; (3) that Plaintiffs demanded the return of the money; and (4) that Defendants refused to return it. Johnson v. First Union Nat'l Bank, 255 Ga. App. 819, 823, 567 S.E.2d 44, 49 (2002). However, where a plaintiff alleges at the time the action is brought that a defendant is still in possession of the converted property—as is the case here—the elements of conversion are presumed. See O.C.G.A. § 44-12-150. In addition, the pleading requirements of conversion are unnecessary for a claim of money had and received, since all that is required is that the defendant be in possession of money rightfully belonging to the plaintiff. Haugabook v. Crisler, 297 Ga. App. 428, 432, 677 S.E.2d 355, 359 (2009). Accordingly, the Court finds no pleading deficiencies in either claim.

Lastly, the Court finds that Plaintiffs have alleged sufficient facts in their complaint to imply misuse of the funds. Plaintiffs allege both that Defendants refused to provide an accounting of the funds and that a portion of the funds was earmarked for an expenditure that Plaintiffs were already paying. (Doc. 32 ¶¶ 101-107.) The Court finds these facts sufficient to make misuse of the funds plausible, which

is all that is required to survive a motion to dismiss. See Twombly, 550 U.S. 544, 547.

IV. WRONGFUL FORECLOSURE AND PLAINTIFFS' DEFAULT

Defendants first argue that Plaintiffs' wrongful foreclosure claim and claim to set aside the foreclosure are barred because Plaintiffs are admittedly in default. (Doc. 34, Attach. 1 at 12-13.) Defendants also argue that Plaintiffs' default should prevent them from enforcing any other rights they may have under the Security Deed. (Doc. 46 at 2.) Plaintiffs respond that default alone does not preclude a wrongful foreclosure claim (Doc. 36 at 9) and that whether or not Plaintiffs can enforce provisions of the Security Deed while in default depends on the cause of the default (Doc. 49 at 2-3).

Under Georgia law, a debtor bringing a claim for wrongful foreclosure must show (1) a legal duty owed to it by the foreclosing party; (2) breach of that duty; (3) a causal connection between the breach and the injury sustained; and (4) damages. See Heritage Creek Dev. Corp. v. Colonial Bank, 268 Ga. App. 369, 371, 601 S.E.2d 842, 844 (2004). In general, the mere fact that a debtor is in default does not alone completely bar a wrongful foreclosure action, or the possibility to set aside a foreclosure, because it is at least

plausible that a defaulting debtor could still show the above elements. <u>Brown v. Freedman</u>, 222 Ga. App. 213, 215, 474 S.E.2d 73, 76, (1996). Otherwise, it would be extremely difficult for any party wrongfully put into default by the inappropriate action of a creditor to obtain relief. However, these types of claims may ultimately fail if the facts show that a plaintiff went into default through no fault of the defendants. <u>See</u> <u>Heritage Creek</u>, 268 Ga. App. 369, 371-72, 601 S.E.2d 842, 845. Because Plaintiffs allege that default in this case was induced by Defendants' wrongful actions, the Court finds that whether Plaintiffs' default prevents recovery is an issue best determined at the summary judgment stage. Accordingly, the Court will not dismiss these claims here.

Defendants also argue that Plaintiffs have not alleged facts showing Defendants failed to send a foreclosure notice, only that Plaintiffs never received such notice. (Doc. 34, Attach. 1 at 15.) The Court finds this argument wholly without merit. While "sent" and "received" have legally distinct operative effects when interpreting the terms of a contract, such is not at issue here. Plaintiffs merely plead that they did not receive notice prior to foreclosure and, consequently, they believe notice was never sent. (Doc. 32 ¶¶ 74-77.) This is all the law requires at this stage in the

litigation. Accordingly, the Court finds that the complaint alleges sufficient facts to suggest that discovery could reveal facts to plausibly support Plaintiffs' claim.

Defendants next argue that even if they failed to send notice, Georgia law at the time of the foreclosure did not require prior notice for foreclosure on second homes. (Doc. 34, Attach. 1 at 13-14.) Plaintiffs respond that this is a misreading of the law and that notice was required because Plaintiff Flood intended to use the Property as a home at the time the mortgage was executed. (Doc. 36 at 12-15.) Defendants counter that the Security Deed evidences Plaintiff Flood's intent not to use the Property as his residence. (Doc. 39 at 7-10.)

The Court finds Defendants' interpretation of Georgia's old law to be an inappropriate conceptual leap. The statute requires notice only for property that the debtor intends to use as "a dwelling" at the time the mortgage is executed, but it does not follow that such a requirement is inapplicable to second homes. See O.C.G.A. § 44-14-162.3(a) (2009) (amended 2012). The case upon which Defendants rely to support their interpretation involved a twelve-acre mixed commercial use lot. See Ciuperca v. RES-GA Seven, LLC, 319 Ga. App. 61, 735 S.E.2d 107 (2012). The Court cannot find, and Defendants do

not provide, any case where the requirement of notice turned on whether a property was used as a primary or secondary residence, nor can the Court discern any reason the notice requirement would hinge on this fact.

Nothing in Plaintiffs' complaint suggests that the Property was ever meant to be used as anything other than a dwelling. That is, Plaintiffs do not allege that it was to be used as a rental property, retail establishment, or other type of commercial space. Consequently, the Court is unable to conclude as a matter of law that Defendants were not required to provide Plaintiffs notice of foreclosure. While Defendants are free to try to prove, as a factual matter, that Plaintiff Flood never intended to use the Property as a dwelling, the Court will leave this determination for the post-discovery stage of litigation.

V. <u>ESTOPPEL CLAIMS AND EQUITABLE RELIEF</u>

Defendants contend that any promises they made to Plaintiffs other than those in the Security Deed are unenforceable for lack of consideration. (Doc. 34, Attach. 1 at 15-18.) Accordingly, Defendants reason that they had no duty to provide Plaintiffs notice that their modification request was denied prior to foreclosure, and that all of Plaintiffs' estoppel claims should necessarily fail. (<u>Id.</u>)

14

Plaintiffs respond that estoppel claims do not hinge on the enforceability of the underlying contract. (Doc. 36 at 18.)

In general, Defendants are correct that promises made without new consideration are not enforceable. See O.C.G.A. § 13-3-40(a). Estoppel claims are an exception to this principle, however, whereby a party may be estopped from breaking a promise if the promisor should reasonably expect that the promisee would, and in fact did, detrimentally rely on that promise. See O.C.G.A. § 13-3-44(a). Because estoppel claims are not governed by normal contract laws requiring consideration, Plaintiffs' claims may not be dismissed simply because they failed to provide new consideration for Defendants' promises.[7]

Defendants next argue that equitable relief is unavailable to Plaintiffs because they come to the table with "unclean hands" by having defaulted on the mortgage. (Doc. 34, Attach. 1 at 18.) Broadly speaking, the unclean hands doctrine requires that a party seeking equitable relief must give the other party all the equitable rights to which it is entitled. See O.C.G.A. § 23-1-10. As stated above, however,

---

[7] The Court also finds that an explicit promise not to foreclose until a specific future event occurred, which is what Plaintiffs allege Defendants repeatedly stated, is not insufficiently vague so as to undermine an estoppel claim. See Rental Equip. Grp., LLC v. MACI, LLC, 263 Ga. App. 155, 157, 587 S.E.2d 364 367-68 (2003).

the Court has not made a determination as to the cause of Plaintiffs' default or whether they were entitled to do so. Accordingly, while Plaintiffs conceivably could be barred from equitable relief if the default is found to be the result of their own misconduct, that determination is simply premature at this point.

Defendants also argue that Plaintiffs have not properly alleged that they detrimentally relied on Defendants' promises or that the reliance was reasonable. (Doc. 34, Attach. 1 at 16-18.) Again however, the Court finds that an analysis into these questions is simply inappropriate at this stage of the litigation. Clearly, Plaintiffs have alleged that they detrimentally relied on Defendants' promises not to foreclose when Plaintiffs withheld their mortgage payments which led to the foreclosure. (Doc. 32 ¶¶ 69-71.) The Court sees no reason to evaluate the factual arguments of the parties at this stage to determine whether the reliance was or was not objectively reasonable.[8]

---

[8] The Court notes, however, that it is unconvinced of Plaintiffs' contention that an estoppel claim's reasonable reliance requirement invariably necessitates a jury. (Doc. 41 at 6.) While it is certainly a factual inquiry, the Court may revisit these claims at the summary judgment stage to determine whether Plaintiffs have produced facts such that a reasonable jury could find in Plaintiffs' favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## VI. BREACH OF CONTRACT

Plaintiffs' complaint states that Defendants are in breach of contract for failing to provide an accounting of the escrow fund as required by the Security Deed. (Doc. 32 ¶¶ 179-80.) Defendants argue that Plaintiffs have pled no facts that could show an accounting would reveal "impropriety or misapplication of the escrow funds" and thus no damages are apparent. (Doc. 34, Attach. 1 at 20.) As Defendants correctly point out, any breach of contract claim must sufficiently allege both a breach of the contract as well as actual and proximate damages on behalf of the non-breaching party. See TechBios, Inc. v. Champagne, 301 Ga. App. 592, 595, 688 S.E.2d 378, 381 (2009). Plaintiffs respond that the unexplained increase in the escrow payment suggests that an accounting could reveal improper charges, and that they are entitled to determine through discovery whether money has been improperly withheld. (Doc. 36 at 21-22.)

The Court finds that Plaintiff has alleged sufficient facts, taken as true, that demonstrate they could have been overcharged in their payments to the escrow fund. In addition, the Security Deed states that "[i]f there is a surplus of Funds held in escrow . . . Lender shall account to Borrower for the excess funds. . . ." (Doc. 32, Ex. E at 5.)

Because an accounting of the fund would not only reveal these overcharges, but also require Defendant to repay the excess funds, the Court finds the failure to perform an accounting would constitute a breach of contract that may allow Plaintiffs to prove actual damages. Accordingly, Plaintiffs' breach of contract claim should not be dismissed.

VII. <u>DECLARATORY RELIEF, FEES, AND PUNITIVE DAMAGES</u>

Lastly, Defendants contend that Plaintiffs have not specified what type of declaratory judgment they seek, and that none of Plaintiffs' allegations support claims for either punitive damages or attorney's fees.[9] (Doc. 34, Attach. 1 at 20-21.) The Court finds these contentions facially incorrect. Plaintiffs have clearly stated they seek a declaration of their rights concerning the escrow fund and that Defendants had no legal right to foreclose on the Property. (Doc. 32 at 35-36.) Further, Georgia law is clear that actions for wrongful foreclosure or conversion may support an award of attorney's fees and punitive damages. See <u>Bibb Dist. Co. v. Stewart</u>, 238 Ga. App. 650, 656, 519 S.E.2d 455, 461 (1999), <u>Decatur Inv. Co. v. McWilliams</u>, 162 Ga. App. 181, 181, 290

---

[9] Defendants also state that these claims should be dismissed because they necessarily rely on the success of Plaintiffs' other claims. (Doc. 34, Attach. 1 at 20-21.) Because the Court has not dismissed Plaintiffs' other claims, this argument is now moot.

S.E.2d 526, 527 (1982). Accordingly, Plaintiffs' prayers for attorney's fees and punitive damages will not be dismissed. However, Defendants' request to dismiss as moot Plaintiffs' claim for an in junction against foreclosure (Doc. 34, Attach. 1 at 21), to which Plaintiffs have not objected, should be granted.

## CONCLUSION

For the following reasons, Defendants' Motion to Dismiss (Doc. 34) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff Armstrong will remain as a plaintiff in this case. Count Ten of Plaintiffs' second amended complaint is **DISMISSED AS MOOT**. The remainder of Plaintiffs' claims will proceed to trial.

SO ORDERED this 28th day of March 2014.

*[signature]*
WILLIAM T. MOORE, JR
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA