IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

EDNA ARMSTRONG, as Attorney in )
Fact for Thomas Flood, and )
THOMAS FLOOD, )
 )
Plaintiffs, )
 )
v. ) CASE NO. CV413-010
 )
OCWEN MORTGAGE COMPANY; OCWEN )
LOAN SERVICING, LLC; OCWEN )
FINANCIAL CORP.; and THE )
FEDERAL HOME LOAN MORTGAGE )
CORP.; )
 )
Defendants. )
 )

## O R D E R

Before the Court is Defendants' Motion for Summary Judgment (Doc. 83), to which Plaintiffs have filed a response in opposition (Doc. 91). For the following reasons, Defendants' Motion for Summary Judgment is (Doc. 83) is **GRANTED** and Plaintiffs' claims against Defendants are hereby **DISMISSED WITH PREJUDICE**. The Clerk of Court is **DIRECTED** to close this case.

### BACKGROUND

This case arises from the foreclosure of Plaintiffs' home, located at 522 West 45th Street, Savannah, Georgia (the "Property").[1] (Doc. 32 ¶ 27.) Prior to the foreclosure sale,

---

[1] For the purposes of ruling on Defendants' Motion for Summary Judgment, the Court construes the facts in the light most favorable to Plaintiffs. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 577-78 (1986).

Plaintiff Flood held all legal interest in the Property. (Id. ¶ 3.) Pursuant to a New York short-form power of attorney, Plaintiff has handled most all matters regarding the Property, including filing this action. Id. Plaintiff Armstrong has also been the primary resident of the Property since 2003. (Doc. 91 at 2.)

On July 23, 2007, Plaintiff Flood purchased the Property with the assistance of a mortgage from Taylor Bean & Whitaker Mortgage Company.[2] (Doc. 32 ¶ 33.) Later that year, Plaintiff Armstrong became concerned by increased escrow account payments in the monthly mortgage payments. (Doc. 91 at 4.) Pursuant to the terms of the mortgage, the escrow payments were designated to cover taxes and insurance on the Property. (Doc. 83, Attach. 2 ¶ 7.) While Plaintiff apparently did not understand it at the time, the larger escrow payments were necessary to cover additional City of Savannah and Chatham County property taxes based on an increase in the Property's assessed value. (Doc. 91, Attach. 1 ¶¶ 8-11.) Plaintiff Armstrong contacted TB&W to obtain an accounting of the escrow funds, but never received one. (Doc. 91 at 4.)

In July of 2009, Defendants Ocwen Mortgage Company, Ocwen Loan Servicing, LLC, and Ocwen Financial Corporation took over service of Plaintiffs' mortgage loan.[3] (Doc. 91, Attach. 1 ¶ 19.) Plaintiff Armstrong stated that she requested an accounting of

---

[2] Taylor Bean & Whitaker, a former co-defendant, has been voluntarily dismissed from this action. (Doc. 55 at 2.)

[3] The Court will refer to these Defendants collectively as "Defendant Ocwen."

2

the escrow funds from Defendant Ocwen as well, but none was ever provided. (Doc. 91 at 4-5.) In November of 2009, however, Defendant Ocwen sent Plaintiff Flood an "Annual Escrow Accout Disclosure Statement Account History" that included a history of the mortgage's escrow payments, the expenditures from the escrow account, and projections for the upcoming year. (Doc. 83, Attach. 2 ¶¶ 21-24.) Plaintiff Armstrong states that she never saw these documents. (Doc. 91 at 5.)

Still concerned about the increased escrow payments, Plaintiff Armstrong contacted Defendant Ocwen. Id. In response to Plaintiffs' concerns, Defendant Ocwen told Plaintiff Armstrong in a telephone conversation that the loan could be considered for a modification—with potentially lower monthly payments—if Plaintiffs let the loan fall into default. (Id. at 2.) There is no evidence suggesting that Plaintiffs were interested in a loan modification at this time, however, and Plaintiff Armstrong informed Defendant Ocwen that she would make no further payments until she received an accounting of the escrow fund. (Id. at 5.) Plaintiffs made their last mortgage payment in February of 2010. (Id., Attach. 1 ¶ 28.)

In September of 2011, roughly eighteen months after Plaintiffs made their last loan payment and were already in default, Defendant Ocwen sent Plaintiff Armstrong a loan modification application package. (Id., Attach. 2 ¶ 38.) From that point up until the Property was sold at foreclosure, Plaintiff Armstrong spoke with Defendant Ocwen's representatives

3

in numerous telephone conversations and submitted multiple loan modification applications. (Doc. 83, Attach. 2 ¶¶ 39-51.) However, no such modification ever materialized. (Id., Attach. 2 ¶ 55.)

Defendant Ocwen's records indicate that Plaintiff Armstrong's applications were all either incomplete or simply denied. (Id., Attach. 2 ¶¶ 40-42, 47-50.) However, Plaintiff Armstrong insists that she provided all the requested documentation. (Id., Attach. 2 ¶¶ 40-42, 47-50; Doc. 91, Attach. 1 ¶ 41, 46-50.) In response to the loan modification applications, Defendant Ocwen sent letters to Plaintiffs indicating that Plaintiffs would receive a non-approval notice if the application was denied and have a thirty-day period thereafter to cure any deficiencies. (Doc. 91 at 6.) The letters also stated that "no foreclosure sale will be conducted and you [Plaintiffs] will not lose your home" while either the application was being considered or during the thirty-day review period. Id.

Plaintiff Armstrong denies ever receiving a non-approval notice for any of the loan modification applications, but did receive a letter in mid-April stating that the Property would be sold at foreclosure. (Doc. 84, Attach. 1 at 23.) Defendant Ocwen's records indicate that notices of denial were sent to Plaintiff Flood, but Plaintiff Armstrong denies ever seeing these notices. (Doc. 83, Attach. 2 ¶ 52; Doc. 91, Attach. 1 ¶ 52.) Nevertheless, Defendant Ocwen informed Plaintiff

4

Armstrong over the telephone that the loan modifications had been denied. (Doc. 84, Attach. 45-46.) Despite these communications, however, Plaintiff never cured the default or made any further mortgage payments and the Property sold at foreclosure on June 5, 2012. (Doc. 91, Attach. 1 ¶ 78.) Defendant Ocwen then transferred the Property to Defendant Federal Home Loan Mortgage Corp. ("FHMLC") pursuant to a special warranty deed. (Id., Attach. 1 ¶ 79.) Defendant FHMLC is the current owner of the Property. (Id., Attach. 1 ¶ 80.)

To avoid dispossession after the foreclosure sale, Plaintiffs filed the present action in the Superior Court of Chatham County, Georgia, after which Defendants removed to this Court pursuant to 12 U.S.C. § 1452(f). (Doc. 1.) On January 23, 2013, this Court entered a consent order enjoining Defendants from dispossessing Plaintiffs and requiring Plaintiffs to make regular payments into the registry of the Court. (Doc. 6.) On July 29, 2013, Plaintiffs filed their Second Amended Complaint. (Doc. 32.) On February 25, 2015, Defendants filed this Motion for Summary Judgment. (Doc. 83.)

**ANALYSIS**

I. <u>STANDARD OF REVIEW FOR SUMMARY JUDGMENT</u>

According to Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material

5

fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts that are material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

II. PLAINTIFFS' CLAIMS FOR BREACH OF CONTRACT, CONVERSION, MONEY HAD AND RECEIVED, AND PETITION FOR ACCOUNTING

Defendants have moved for summary judgment with regard to Plaintiffs' claims of conversion, money had and received, breach of contract, as well as Plaintiffs' petition for an accounting of the escrow funds. (Doc. 83, Attach. 1 at 13-16, 26-27.) Plaintiffs offer no argument in opposition and appear to have abandoned these claims. Regardless, the Court finds no genuine issue of material fact exists to sustain any of these causes of action and that Defendants are entitled to judgment as a matter of law.

The claims for breach of contract, conversion, and money had and received all rely upon Plaintiffs' allegations that Defendants misappropriated funds contained within the escrow account. (Doc. 32 at 18-21.) However, the record in this case is devoid of any evidence suggesting that Defendants wrongfully possessed, converted, or otherwise misused any escrow funds belonging to Plaintiffs. Rather, it is readily apparent from the record in this case that the escrow funds were legitimately used to cover taxes and insurance on the Property. (Doc. 91, Attach. 1 ¶¶ 8-11.) Furthermore, it appears that an accounting of the escrow funds actually was provided to Plaintiff Flood, who simply neglected to pass on the information to Plaintiff Armstrong. (Doc. 91, Attach. 2 ¶ 22-24.) Accordingly, the Court finds summary judgment in Defendants' favor to be appropriate with regard to these claims.

III. PLAINTIFFS' CLAIM OF PROMISSORY ESTOPPEL

Defendants also move for summary judgment with regard to Plaintiffs' promissory estoppel claim. (Doc. 83, Attach. 1 at 22-24.) Specifically, Defendants argue that Plaintiffs did not detrimentally rely on any promise by Defendants, that any purported reliance was objectively unreasonable, and that Plaintiffs cannot show any damages as a result of their reliance. Id. In response, Plaintiffs insist that their decision to withhold mortgage payments was a reasonable and detrimental

8

reliance on Defendants' promise not to foreclose on the property while Plaintiffs' loan modification was under consideration. (Doc. 91 at 14-18.)

Georgia law states that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." O.C.G.A. § 13-3-44(a). To prevail on a promissory estoppel claim under this statute, a plaintiff must demonstrate that "(1) the defendant made a promise or promises; (2) the defendant should have reasonably expected the plaintiff[] to rely on such promise; (3) the plaintiff[] relied on such promise to [his or her] detriment; and (4) an injustice can only be avoided by the enforcement of the promise, because as a result of the reliance, plaintiff[] changed [his or her] position to [his or her] detriment by surrendering, forgoing, or rendering a valuable right." Mariner Healthcare, Inc. v. Foster, 280 Ga. App. 406, 412, 634 S.E.2d 162, 168 (2006).

Here, Plaintiffs insist that their decision to withhold mortgage payments was caused by reasonable and detrimental reliance on a letter from Defendant Ocwen stating that no foreclosure sale would take place until thirty days after Plaintiffs received a non-approval notice for their loan

9

modification. (Doc. 91 at 14-15.) However, Plaintiffs admit that they received the letter only after they had already let the loan fall into default. Id. Furthermore, Plaintiffs actually admit that they ceased making their monthly payments not because they believed they were immune from foreclosure sale during this grace period, but because of unfounded suspicions of Defendants' misuse of escrow funds. (Id., Attach. 1 at 6.) Indeed, Plaintiff Armstrong specifically told Defendants that she "would not make any more monthly mortgage payments until she received an accounting of the escrow money." Id.

Quite simply, the Court finds that even if Defendant Ocwen expressed a promise not to sell the Property at foreclosure, Plaintiffs have failed to show any evidence to suggest that they relied on this promise. Plaintiffs intentionally entered default well before Defendant Ocwen made any representations regarding selling the property at foreclosure, and Plaintiffs never deviated from this course. Because there is no evidence to suggest Plaintiffs reasonably relied on a promise by Defendants, Plaintiffs have failed to establish a genuine issue of material fact with regard to their promissory estoppel claim.[4]

---

[4] Even if the Court construed Plaintiffs' continued default as reliance on Defendants' promise, Plaintiffs' promissory estoppel claim would still fail. Plaintiffs received repeated notifications—both in writing and verbally—that the property was at risk of being sold at foreclosure. Defendant Armstrong even admits to receiving a letter approximately six weeks in advance

10

Accordingly, summary judgment in Defendants' favor is appropriate with regard to this claim.

IV. EQUITABLE ESTOPPEL

Defendants also move for summary judgment with regard to Plaintiffs' equitable estoppel claim. (Doc. 83, Attach. 1 at 22-24.) As with their promissory estoppel argument, Defendants maintain that Plaintiffs have presented no evidence demonstrating reasonable and detrimental reliance on a statement by Defendants. Id. Plaintiffs meanwhile assert that they defaulted on the loan pursuant to Defendant Ocwen's advice, thus Defendants should be estopped from dispossessing Plaintiffs from the Property. (Doc. 91 at 5, 18-19.)

Under Georgia law, equitable estoppel requires "generally [] some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence as to amount to constructive fraud, by which another has been misled to his or her injury." O.C.G.A. § 24-14-29. To establish an equitable estoppel claim, a plaintiff must show: (1) a false

---

that the home would be sold at foreclosure. (Doc. 84, Attach. 1 at 23.) Prior to that, Defendant Ocwen informed Plaintiff Armstrong in a telephone conversation that all the loan modification applications had been denied. (Id., Attach. 45.) Plaintiffs are not entitled to blindly operate as if they are immune from foreclosure in spite of such clear communications to the contrary. While it is possible that Plaintiffs once genuinely believed they could withhold their mortgage payments without repercussions, they were certainly given fair and timely notice of the risk inherent in their actions.

11

representation or concealment of facts; (2) knowledge of the party making the false representation or concealment of facts; (3) ignorance of the truth on behalf of the party affected thereby; (4) intent or gross negligence amounting to constructive fraud on behalf of the party seeking to influence the conduct; and (5) action by the aggrieved party induced by such conduct. Kim v. Park, 277 Ga. App. 295, 296, 626 S.E.2d 232, 233 (2006) As with a claim for promissory estoppel, the party asserting a claim for equitable estoppel must show reliance on the false representation as well as "action based thereon of such character as to change his [or her] position prejudicially." Medders v. Smith, 245 Ga. App. 323, 324-25, 537 S.E.2d 153, 155 (2000).

Plaintiffs insist that they withheld their mortgage payments because Defendant Ocwen's representative told them in a telephone conversation that, to be eligible for a modification, Plaintiffs would have to be in default on their loan. (Doc. 91 at 5.) However, as discussed above, Plaintiffs have consistently stated that their misguided fears about escrow funds were the impetus for withholding the mortgage payments. Again, Plaintiff Armstrong informed Defendant Ocwen directly that she would not make her monthly mortgage payments until her concerns regarding the escrow funds were satisfied. (Id., Attach. 1 at 6.) Furthermore, Plaintiffs have put forth no evidence that they

12

even pursued a loan modification until eighteen months after they first went into default. (Doc. 83, Attach. 2 ¶ 38.) As a result, the Court finds no reasonable jury could conclude that Plaintiffs changed or altered their position in response to Defendant Ocwen's statement—it is obvious that such is not the case. Accordingly, Defendants are entitled to summary judgment on this issue.

Even if the court were to construe Plaintiffs' default as partially reliant or somehow encouraged by Defendant Ocwen's statement concerning loan modification eligibility, Plaintiffs' equitable estoppel claim would still fail. As stated above, the statement giving rise to an equitable estoppel claim must amount "to a false representation or concealment of facts." Medders, 245 Ga. App. at 324, 537 S.E.2d at 155. Here, Defendants' statement that Plaintiffs would need to default to be considered for a loan modification is not false or otherwise misleading. In fact, the evidentiary record demonstrates that Plaintiffs were considered for a loan modification, and that the parties communicated frequently with regard to Plaintiffs' modification applications. (Doc. 91, Attach. 1 ¶¶ 53-64.) The fact that Plaintiffs never obtained a loan modification is not evidence of fraud or gross negligence on the part of Defendant Ocwen. By truthfully informing Plaintiffs that a loan modification might be possible once the loan was in default, Defendant Ocwen did

not convey a promise or guarantee that Plaintiffs were entitled to such.

Furthermore, Defendant Ocwen informed Plaintiffs of the numerous risks of default, and gave Plaintiffs timely notice of the Property's imminent foreclosure sale. (Doc. 84, Attach. 1 at 23.) Quite simply, Plaintiffs can point to nothing in the record to suggest Defendants' statement was false, misleading, grossly negligent, or concealed an important fact. Accordingly, Plaintiffs have failed to present a genuine issue of material fact to sustain their equitable estoppel claim and Defendants are entitled to summary judgment.

V. WRONGFUL FORECLOSURE

The Court now turns to Plaintiffs' wrongful foreclosure claim. As with Plaintiffs' promissory and equitable estoppel claims, Plaintiffs insist the foreclosure sale was wrongfully undertaken because Defendants previously advised Plaintiffs they might obtain a loan modification if they defaulted, and because Plaintiffs were not given proper notice before the property was sold at foreclosure. (Doc. 91 at 14.) As with Plaintiffs' aforementioned claims, however, the Court finds these arguments unavailing.

Under Georgia law, a debtor bringing a claim for wrongful foreclosure must show (1) a legal duty owed to it by the foreclosing party; (2) breach of that duty; (3) a causal

14

connection between the breach and the injury sustained; and (4) damages. See Heritage Creek Dev. Corp. v. Colonial Bank, 268 Ga. App. 369, 371, 601 S.E.2d 842, 844 (2004). In general, the mere fact that a debtor is in default does not alone completely bar a wrongful foreclosure action, or the possibility to set aside a foreclosure, because it is at least plausible that a defaulting debtor could still show the above elements. Brown v. Freedman, 222 Ga. App. 213, 215, 474 S.E.2d 73, 76, (1996). However, these claims will fail if the facts show that a plaintiff went into default through no fault of the defendants. See Heritage Creek, 268 Ga. App. at 371-72, 601 S.E.2d at 845. Quite simply, " '[w]hen a power of sale [in a security deed] is exercised all that is required of the foreclosing party is to advertise and sell the property according to the terms of the instrument, and that the sale be conducted in good faith.' " Ceasar v. Wells Fargo Bank, N.A., 322 Ga. App. 529, 532, 744 S.E.2d 369, 373 (2013) (quoting Kennedy v. Gwinnett Commercial Bank, 155 Ga. App. 327, 330, 270 S.E.2d 867, 871 (1980)).

The Court again notes that Plaintiffs admit they intentionally defaulted on their mortgage obligations due to suspected misuse of escrow funds by Defendants. (Doc. 91 at 5.) Because the record is clear that no misuse of the escrow funds ever took place, the Court finds no wrongdoing on Defendants' behalf as to this issue. To the extent that Plaintiffs could

15

have been motivated to default by Defendants' statements regarding the loan modification, Plaintiffs again fail to establish how such statements created a duty not to foreclose on the property. At most, Defendants truthfully informed Plaintiffs that a loan modification may be available if Plaintiffs were in default. Plaintiffs were repeatedly advised of the risks associated with this course of action, yet still abstained from making payments by their own volition. Because this was a purely intentional decision based on Plaintiffs' independent misunderstanding of the facts, the Court can discern no reason to hold that Defendants had a duty to abstain from selling the property at foreclosure.

Again, Plaintiffs nevertheless attempt to complicate the issue by insisting that the sale was "in bad faith" because Defendant Ocwen promised not to proceed with the sale while Plaintiffs' loan modification was under consideration. (Doc. 91 at 20.) As previously discussed, however, this gratuitous promise did not create a separate duty for Defendant Ocwen to refrain from selling the property at foreclosure because Plaintiffs have failed to put forth any evidence indicating they actually relied on it when choosing to default on the loan. Without evidence that Defendants breached some duty, Plaintiffs' claim for wrongful foreclosure fails as a matter of law.

Furthermore, the "good faith" element of a foreclosure sale is simply immaterial to the facts of this case. A foreclosing party is required only to conduct the sale in good faith "to obtain the amount produced by such a sale." Gordon v. S. Cent. Farm Credit, ACA, 213 Ga. App. 816, 818, 446 S.E.2d 514, 516 (1994). That is, the good faith requirement focuses on the manner in which the sale was conducted—ensuring that the property was sold fairly on the open market—and not on whether the foreclosure itself was wrongful. As such, "[a] foreclosure sale may only be set aside in equity when 'the price realized is grossly inadequate and the sale is accompanied by either fraud, mistake, misapprehension, surprise or other circumstances which might authorize a finding that such circumstances contributed to bringing about the inadequacy of price.' " Ceasar, 322 Ga. App. at 533, 744 S.E.2d at 373 (quoting Kennedy, 155 Ga. App. at 330, 270 S.E.2d at 871). Plaintiffs do not allege that the home was sold in violation of any terms of the security deed or that the manner in which the property sold was fundamentally unfair. Accordingly, Plaintiffs have failed to establish a genuine issue of material fact to sustain their wrongful foreclosure claim, and Defendants' request for summary judgment should be granted.

## VII. DECLARATORY JUDGMENT, OTHER EQUITABLE RELIEF, ATTORNEY'S FEES, AND PUNITIVE DAMAGES

Plaintiffs have sought various equitable remedies and statutory damages in addition to their claims of promissory estoppel, equitable estoppel, and wrongful foreclosure. Specifically, Plaintiffs petition for a writ of possession and to set aside the foreclosure, a declaratory judgment regarding their rights to possession of the property, and attorney's fees and punitive damages. (Doc. 32 at 29-34.) However, each of these claims is contingent upon one of Plaintiffs' underlying claims establishing a right to possession of the property. Because the Court finds that none of these underlying claims survive summary judgment, each of these contingent claims must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 83) is **GRANTED** and Plaintiffs' claims against Defendants are hereby **DISMISSED WITH PREJUDICE**. The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this 14th day of September 2015.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA